additions. reasons. I would like to use. In this particular situation, but why don't you address? He falls settee in his 2016 asylum application. But that to me is pretty important. He doesn't go to Cuba. He doesn't go to Cuba. He has an asylum application. He doesn't tell anybody that was detained in Cuba or that even went to Cuba. He only says China. Then he goes to the asylum interview and he tells him that he goes to Cuba. So again, there's a contradiction and that's the one that the BIA and the IJ come up with. And then they don't go very far before he goes to the merits hearing and counsel admits that he didn't mention that he went to Cuba. He was detained in Cuba. Unless it's an application form? In the merits hearing, counsel got up and admitted that the fact about Cuba was not mentioned in the application. Well, Your Honor, I think the fact that the Cuba trip was not mentioned in the asylum application actually is an oversight by the asylum officer. Oversight? Yes, Your Honor. Now, just a minute. You can argue oversight, but again, you and I have been in front of each other before. I'm on substantial evidence review. You arguing oversight is just a good argument by counsel. But the BIA is entitled to get their due as well in their argument, which is you didn't say anything about this in your asylum application. In your asylum interview, you finally tell us. And then in your merits hearing, you admit that you didn't put it in there. So they said that's a problem. Then the next thing they go to is they say, and then you say you were detained for a week in your asylum interview, and you went to jail for seven days. And then when you get to your merits hearing, you say it's only a day. So again, they caught him in another contradiction. Then they go to the next one, where it is, how long did you stay in Cuba? And one time he says two months. And another time he says eight months. All of those significant contradictions in very important applications and hearings. Now, why can't I say that there is substantial evidence then to sustain the BIA's determination? Because, Your Honor, those inconsistencies do not reflect. Because what? The points that you just pointed out, the discrepancies do not reflect negatively upon the petitioner's propensity to lie, because it does not reflect in any way his honesty. Actually it reflects his honesty, because the petitioner was the one who provided the information. Well, just a minute. I didn't even think that they argued that in front of the BIA. I mean, in front of the BIA, he seems to suggest that this thing about the, well, first of all, he doesn't say too much about, except that he went to Cuba, and he didn't have an explanation of why he didn't do that. But then when it goes to the detained for a week, and that's for seven days, he says, well, that's all the interpreter's fault. The interpreter didn't have the right thing down. But the asylum interviewer didn't say he turned for one week, or seven days, or whatever. He differentiated the days and the way he laid it out. So I'm having a tough time understanding why the BIA is wrong in saying that the interpreter was the problem. Well, let's just assume those inconsistencies do exist. So our argument that they do not reflect his propensity for dishonesty, because he's the one who mentioned the Cuba trip, his asylum interview. Actually, the asylum officer went through the  through the immigration process. He went through those asylum application, item by item. The asylum interviewer, the asylum officer put a check mark on the question whether or not you were arrested in any other country than the United States. So at that time, the asylum officer should have... You're saying even though those are big inconsistencies, and we see that they are, we should ignore that part, because that does not sustain the substantial evidence review? What do I do with the length of stay? Two months or eight months? You just said, there's nothing that the petitioner here can gain by changing the length of his stay in Cuba. So therefore, it does not go to the heart of his asylum. So again, you admit the inconsistency, you just don't think it sustains? Yes, Your Honor. So then we have to look at this inconsistency in the context, again, in the totality of circumstances. Why don't we look at the fine receipt? Okay, the fine receipt contains a date 9-24-14. And then there's a stamp. Looks like it's stamped on there with 2009. Okay, Your Honor. So, your client says that date doesn't relate to the year. But when he was confronted about what does it relate to, he doesn't know. I happen to... Now because of this discrepancy, the BIA determined the document didn't support his testimony. That seems pretty plausible. Well, the document does support his testimony, Your Honor. Because the number 2009 does not reflect, does not refer to the year. I'm not trying to say what is right or what is wrong. I'm just saying when you got a stamp right on it that says 2009, and you give your client the chance to say, what does that relate to? And he says, well, I don't have any idea. Why is it bad for the BIA to say, well, we're not going to rely on that document. The board has a document you found out of itself, and also the court has the document in front of the court. And if you look at the... That's the page 465 of the administrative record. And it says registration number 2009 with serial number 31. So it's a part of the registration number. Your Honor, judging by my accent, you know that I'm a native Chinese speaker. Just look at the original of the receipt. And any reasonable person who understands Mandarin or Chinese will tell that 2009 actually is not part of the stamp. It's part of the serial number. I understand your good argument. And if I were there, maybe I would have bought it. But the bottom line is, the BIA said he doesn't know what that is about. He doesn't know why it's there. He doesn't understand the situation. So therefore, we're just not going to use that document to help. That's all they said. I agree with you, Your Honor. Maybe the document does not help his credibility, but it does not detract from his credibility. We're already past the detraction. We've talked about those other ones, which we've already talked about. That's why I... So, Your Honor, and also, the court has a property decision that's in Kumar Garland, and I think the panel agree with me that the church attendance is not a valid reason for the adverse credibility finding. And the court in Kumar versus Garland... I guess my worry about that is this, and I don't mean to monopolize here, but even if I give you that it seemed pretty implausible about what they said about church attendance, it seems they've got lots of reasons otherwise. That's why I had you address those first. So what... I might even go with you on the implausibility of the church. But I still have lots of reasons to sustain the credibility determination. That's why I had you talk about those first. But then the court should not substitute... As you pointed out earlier, Your Honor, the court should not substitute its judgment with the BIS judgment, because in the case of Kumar, the court says that if the petitioner has successfully satisfactorily investigated at least some, if not all, of the reasons identified by the BIA for its adverse credibility finding, the court should remain to the BIA to determine whether the remaining factors are sufficient in the title of the totality of the circumstances. Thank you, Mr. Li. We've taken you past your time. We'll give you two minutes for rebuttal. Mr. Spillank. Thank you. Substantial evidence supports the agency's adverse credibility finding in this case and also their application, although totality of the circumstances in this case clearly shows that just if nothing else, based on his false statements and his asylum application and his later false statements to, or at least conflicting statements between his testimony and the asylum officers. Counsel, as I understand it, the petitioner only challenges the adverse credibility finding on appeal, right? Correct. That if he doesn't get that, we have to send the case back for a merits finding. Isn't that true? I believe with this case, that's true. I believe that's true. There's really no question that the petitioner, when he testified before the asylum officer, said that he would have been detained for seven days. Do we know whether that's his words or the asylum officer's words? It's written down by the asylum officer on the asylum officer's memorandum. It's essentially a statement It's not a verbatim transcript, but they wrote down what the petitioner had said. I guess that's kind of the problem, at least with the concern about the translation issue. It's true exactly what the process is, but if those aren't his words and the translation issue kind of arose in between what he said and how the officer took it. Your Honor, I think the best argument for why there was no translation error in that issue between one day and seven days is because he also says at one point in the asylum officer's notes, one week, seven days. He made a lot of argument about the one and the seven character in Mandarin look the same, and so they're easily confused. But it's not just one seven. It's also one one. Is there also confusion between week and day? He didn't mention that. So you have it in the asylum officer's notes both referred to as seven days and one week, not so that you don't have that problem at all. It seems pretty clear that it's not a problem. But both instances are the asylum officer's notes, not a transcript of his testimony. Correct. Correct. You're right. And, Your Honor, there's other issues. I mean, if it was just a translation error, it wouldn't just be the one day versus the seven days, but it also would be his other inconsistencies between his asylum testimony with the asylum officer and then later his trial testimony, which was also inconsistent on the length of time that he was detained. He went from two months with the asylum officer and then admitted the length of time that he visited. Correct. And later changed that to eight months, which was a substantial difference in time. And... Did he have the opportunity to explain that inconsistency at the hearing? The immigration judge certainly was asking questions like, why would you have gone eight months versus two months? And the explanation was, yes, I went there for eight months. He didn't explain why he had changed from two to eight months. But... But if he were going to say he didn't have an explanation or wasn't given the chance for an explanation, he didn't exhaust that in front of the BIA at all, did he? Correct, Your Honor. And, in fact, where have we required exhaustion of arguments rather than claims? I mean, so we have a... Right, so the claim here is that I was not given the opportunity... I.J. did not adhere to our step process for it. And that's one element of the  But it's unclear to me whether that's an argument, which typically you don't require exhaustion of, or whether it's an issue or claim that we would require exhaustion of that he spoke to. He did raise the general issue  On that point. Yeah, I would respond, Your Honor, by saying not only did he not exhaust that specific type of argument, which is a very specific argument, was he given the opportunity to explain? He actually didn't... It wouldn't have been necessary to ask that question or to raise that issue because his whole entire... His entire thrust in his appeal to the board was there's no problem here. There's no... These are minor problems that These aren't major inconsistencies. They are inconsistencies, but they're just simply minor. That was the entire thrust of his argument, which is really kind of... I wouldn't say the opposite, but it's not on the same track of I wasn't given an opportunity to explain these differences. What about that question about who detained and the question about whether it's the airport police or the police? How much weight should we put on that, given how it came out? It's very clear in the asylum officer's notes that he said he was arrested by the police. And when he was asked, who did you pay the fine to? He said, the police station, the Cuban police station. He said nothing about airport detention. And it's clear why... It's definitely an inconsistency talking about I wasn't detained. I didn't... At first, his entire argument about why he was detained or not detained, he said, well, I didn't lie on my asylum application because I don't consider what happened in Cuba to be the same thing as what the asylum application question was asking, which made no sense because it asked specifically detained, held, interrogated. It includes... It's very expansive. It's not just arrested. And what was the... So there was some colloquy with the immigration judge on that point. What was the... Where did the IJ give a specific cogent reason not to accept his explanation? They're both police. They're different places. Well, I think the basic finding was the purpose of making that change in his story or his narrative was that it was less damning to his immigration case that he had completely forgotten to or completely failed to mention this entire incident on his asylum application completely and never changed it even though he later had the opportunity to change it. I think that was the entire thrust of what the immigration judge found. Do you... Is the government relying on the inconsistencies with respect to the church attendance? We do believe that substantial evidence supports the immigration judge's, as found by the board's, finding that there was inconsistency in the testimony between the petitioner and his wife. The petitioner testified that the reason why he did not attend church on the Big Island was because there were no churches where they spoke Chinese on the Big Island. So they didn't go to church on the Big Island. And his wife came back and testified that, yes, in fact, there were churches on the Big Island that they did speak Chinese, but they didn't go to them because they didn't believe in baptism. Why isn't that consistent? If I refer to my church and that there are no churches, why is it inconsistent that he's not also referring to the churches that  denomination? I think he was saying that there were no churches at all on the Big Island. Oh, it's in Chinese. I think that was the crux of what the inconsistent finding was. There's sort of a plausibility finding as well with that issue. But that was the inconsistency. The plausibility that there are no churches, so the IJ and the board, to the extent it just doesn't make any sense to me,  concept of the inconsistency finding was correct in deciding for itself which churches may or may not count as a church for his worship purposes. No, the plausibility finding related to the fact that petitioner's entire basis for claiming that he left China for religious persecution purposes was because he didn't, he wasn't able to go to a house church. He wasn't able to attend a church, so he left China. So the implausible finding is         that he would move to the United States to an area where there would be no church that he would be able to attend for whatever reason, either because they didn't speak Chinese in that church or because he wasn't in agreement with their theology. You would think that he would make that decision. It would be more plausible that you would make a decision if you fled China for religious purposes because you weren't able to go to church. You would go someplace where you were able to go to church. Well, but he says he attends church in Honolulu one or two times a month. His wife doesn't go. That's correct, Your Honor. That is true. I think the government's argument on this is a little problematic. I think it's kind of inconsistent. He testifies he's very religious. He wants to go to his house church. He goes to house church even when he can't, even after his arrest. He doesn't attend church on the Big Island because there's no Chinese churches. Then the wife says there is a         He says he attends church in Honolulu one or two times a  But they don't go because they don't practice baptism. He didn't say that. She did. Then he says he attends church in Honolulu one or two times a month. But his wife doesn't go. And then they say they both read the Bible. And then all of a sudden, the IJ jumps to the conclusion he moves to a place where he can't attend church. I mean, he can't attend church. He went in Honolulu. I think if I could answer your question, Judge, although I don't know that I can point it to the agency, I don't know       it to the agency's specific language. But I think it would be safe to say it's implausible that especially the entire reason why you move to the Big Island is for economic reasons so you can get a job. That's why he said he moved to the Big Island was for money purposes so they can work. I think he also testified that the restaurant that he was working with on the Big Island was experiencing tough financial problems. And that was one of the reasons why I think I would argue that the fact that he's       arguing that he's spending $178 twice a month to fly back to Honolulu also is probably not plausible. Well, I didn't say that. You might argue it. If the judge has any more questions. It appears not. Thank you. And I think that this factor is in that to support a diverse determination. Mr. Lee, could I have your response to your friend's argument about the length of detention question, the inconsistencies apparent between the notes and the  Actually, you know, the traditional answer that when he was asked about the length of detention, he said approximately two months is more than two months. It's been a while. I couldn't remember. And then eight months, I would argue that is more than two months. I'm sorry about the detention. The week versus day issue. His arrest issue. The one week. One week, seven days versus one day. Well, yeah. So just the one and the seven in Mandarin Chinese are very easily mixed up. So maybe that's something was lost in the translation. But we don't know. But just the nature. We're just asking because the agency should not place too much weight on the reliability of the actually assigned officers notes because it's not the nature of how the interview was conducted. And the court has precedent in the decision saying that the assigned interview process by nature is not reliable. All right. Thank you very much. I thank both counsel for their helpful arguments. The case is submitted.
judges: SMITH, MILLER, JOHNSTONE